UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
+---------------------------------------+
| USDC SDNY                             |
| DOCUMENT                              |
| ELECTRONICALLY FILED                  |
| DOC #: _____        |
| DATE FILED: September 30, 2014        |
+---------------------------------------+
```

JACOB PHILIP,

                Plaintiff,

    - against -

DEUTSCHE BANK NATIONAL TRUST
COMPANY, As trustee for Pooling and
Servicing Agreement Dated As of November
1, 2006 Securitized Asset Backed Receivables
LLC Trust 2006-WM3,

                Defendant.

**MEMORANDUM
OPINION & ORDER**

11 Civ. 8960 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        This is a personal injury negligence action involving a house fire.  On March 26, 2011, Plaintiff Jacob Philip was injured when an electrical hot plate being used as a heater caught fire at 171-50 107th Avenue in Queens, New York (the "Property").  Plaintiff brings this action against Defendant Deutsche Bank National Trust Company ("Deutsche Bank"), the titleholder of the Property, alleging that it was negligent for "fail[ing] to monitor who was residing at the subject premises, permitting the use of a cooking plate as a heating device[,] failing to keep the subject premises hazard free and safe[,] and violat[ing] New York State and New York City Building Codes."  (Notice of Removal (Dkt. No. 1), Ex. D (Verified Bill of Particulars) ¶ 17)  Defendant has moved for summary judgment on all claims.  For the reasons stated below, Defendant's motion will be granted.

# BACKGROUND[1]

## I.    THE PROPERTY

On September 17, 2010, Defendant Deutsche Bank took title to the Property – a single family residence located in a residential neighborhood of Queens, New York – by a Referee's Deed following foreclosure.  (Pltf. R. 56.1 Resp. (Dkt. No. 69) ¶¶ 1-2)[2]

Defendant's loan servicer, Ocwen Loan Servicing ("Ocwen"), contracted Altisource Portfolio Solutions ("Altisource") to maintain and manage the Property.[3]  (December 19, 2013 David Strathy Deposition Transcript ("Strathy Dep. Tr.") (Dkt. No. 71) 8:13-25, 9:5-10)  According to Altisource employee David Strathy, Altisource provides "property preservation services" to loan servicers like Ocwen, which entails "ensur[ing] that [the properties] are kept up to code, [maintaining them] in good condition[,] and [ ] sell[ing] the[m]."  (Id. at 7:6-16)

---

[1]  Unless otherwise indicated, this Court cites to facts drawn from a party's Local Rule 56.1 statement where the opposing party has admitted those facts or has not controverted them with citations to admissible evidence.  See Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.") (citations omitted).  Where the party opposing summary judgment disagrees with the moving party's characterization of the cited evidence, and has presented an evidentiary basis for doing so, the Court relies on the non-moving party's characterization of the evidence.  See Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001) (court must draw all rational factual inferences in non-movant's favor in deciding summary judgment motion).

[2]  Plaintiff argues that the Property "was a single family residence being used as a rooming house."  (Pltf. R. 56.1 Resp. (Dkt. No. 69) ¶ 2)  To the extent that Plaintiff is claiming another person was living at the Property, this Court has assumed the truth of that assertion for purposes of deciding this motion.  To the extent that Plaintiff asserts the Property was being used as a rooming house, that is a conclusion that is not appropriate for a Local Rule 56.1 statement of material facts.  See also United Magazine Co. v. Murdoch Magazines Distribution, Inc., 393 F. Supp. 2d 199, 211 (S.D.N.Y. 2005), aff'd sub nom. United Magazine Co., Inc., v. Curtis Circulation Co., 279 F. App'x 14 (2d Cir. 2008) ("a self-serving affidavit that merely reiterates conclusory allegations in affidavit form is insufficient to preclude summary judgment").

[3]  Neither Ocwen nor Altisource are parties to this action.

In its role as property manager, Altisource hired third-party vendors who "performed property inspections on the condition of the [P]roperty" and other general management responsibilities. (Id. at 7:12-19, 11:18-12:11)  On February 7, 2011, Ocwen entered into a "cash-for-keys" agreement with Calmer Clarke, a tenant living at the Property. (Declaration of Sara L. Markert in Support of Defendant's Motion for Summary Judgment ("Markert Decl.") (Dkt. No. 55), Ex. M:  Occupancy Termination Agreement)  "Cash-for-keys" is a transaction whereby the owner of a Real Estate Owned property – i.e., a foreclosed property owned by a financial institution after a failed auction – pays a tenant to vacate the property. (Strathy Dep. Tr. (Dkt. No. 71) 22:2-10; 24:25-25:4)  Pursuant to the "cash-for-keys" agreement here, Defendant paid Clarke – the only tenant living in the Property – $5,000 to vacate the premises. (Def. R. 56.1 Stmt. (Dkt. No. 52) ¶ 3; Pltf. R. 56.1 Resp. (Dkt. No. 69) ¶ 3; see also Markert Decl. (Dkt. No. 55), Ex. M:  Occupancy Termination Agreement) [4]  In exchange, Clarke

---

[4] In support of this factual assertion, Defendant relies on the deposition testimony of Altisource employee David Strathy.  (Def. R. 56.1 Stmt. (Dkt. No. 52) ¶ 3 (citing Strathy Dep. Tr. 23:25-25:4, 34:13-35:11, 35:23-36:22, 38:3-39:8))  Plaintiff objects to Strathy's testimony concerning the "cash-for-keys" transaction, and the management of the Property more generally, as containing double hearsay.  (Pltf. R. 56.1 Resp. (Dkt. No. 69) ¶ 3; Pltf. Opp. Br. (Dkt. No. 68) at 14-15)  Although the precise nature of Plaintiff's argument is difficult to discern, it appears that he is objecting to the fact that Strathy's testimony is based on his review of Altisource's business records, which in turn were created from information provided to Altisource by third-party vendors.  Plaintiff, citing United States v. Gurr, 471 F.3d 144, 151-52 (D.C. Cir. 2006), argues that "in order for [a] business record within a business record to be admissible, both business records must be covered by a hearsay exception, whether Rule 803(6) or otherwise."  (Pltf. Opp. Br. (Dkt. No. 68) at 14)

Plaintiff misunderstands the business records exception. Fed. R. Evid. 803(6) provides that "[a] record of an act, event, condition, opinion, or diagnosis" is not excluded by the rule against hearsay if:

(A)   the record was made at or near the time by – or from information transmitted by – someone with knowledge;

(B)   the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C)   making the record was a regular practice of that activity;

(D)     all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E)     neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

(emphasis added).  Here, the records Strathy relied on at his deposition were "generated by someone [at Altisource] to summarize the work orders" for the Property.  (Strathy Dep. Tr. (Dkt. No. 71) 19:23-25)  Moreover, Strathy confirmed that the records were kept in the ordinary course of business:

Q.     Just as a general question.  Those documents before you that have been marked Plaintiff's 1, are those the business records of Altisource?

A.     Yes.

Q.     Were those records kept in the ordinary course of business by your company?

A.     Yes.

Q.     Were they kept in the ordinary course of business by your company back in March of 2011?

A.     Yes.

(Id. at 15:9-19, 16:6-9)  Defendant has also submitted the affidavit of Michael Dougherty, the Director of Property Management Operations for Altisource.  ("Dougherty Aff." (Dkt. No. 54))  Dougherty's affidavit confirms, based on his personal knowledge, that the Altisource records "are generally made at or near the time by, or from information provided by, persons with knowledge of the activity and transactions reflected in such records.  The Altisource [r]ecords are kept in the ordinary course of the business activity conducted by Altisource."  (Id. ¶ 6 (emphasis added))

Defendant has also submitted Altisource's records of the "cash-for-keys" transaction.  These records include a one-page Altisource printout entitled "Cash For Keys Fulfillment Form," with ten pages of attached photographs.  See Markert Decl. (Dkt. No. 55), Ex. N.  The one page printout – which lists the Property's address – states, inter alia, "CFK Successful – Property Vacant," indicates the "CFK Negotiation Amount" as $5,000, and includes an "Estimated Vacating Date" of March 11, 2011.  The photographs show a vacant house and are date stamped March 11, 2011.

This Court concludes that given Strathy's duties and responsibilities as an Altisource employee, he was competent to testify that the records he relied on at his deposition were kept in the ordinary course of Altisource's business.

The basis for Plaintiff's double hearsay objection is unclear.  The records themselves do not contain any transcription of oral statements.  Moreover, the fact that these records may have been produced based on information reported to Altisource by third-party vendors does not mean that the information contained therein is double hearsay, particularly since those vendors were acting as Altisource's agents and had a duty to report the information conveyed.  Because Defendant has established a hearsay exception under Rule 803(6), Plaintiff's objections to the Strathy deposition testimony, the Dougherty affidavit, the business records attached to the Markert

4

agreed to vacate the Property and surrender possession to the Defendant.  (Def. R. 56.1 Stmt. (Dkt. No. 52) ¶ 3; Pltf. R. 56.1 Resp. (Dkt. No. 69) ¶ 3)  Pursuant to the terms of the agreement, all personal property was removed from the premises and the Property was in "broom clean" condition when Clarke vacated on March 11, 2011. (Def. R. 56.1 Stmt. (Dkt. No. 52) ¶ 5; Pltf. R. 56.1 Resp. (Dkt. No. 69) ¶ 5; Markert Decl. (Dkt. No. 55), Ex. M: Occupancy Termination Agreement)

That same day, Altisource's vendor – Gillo Realty – changed the lock on the front door of the Property, installed a digital lock box, and boarded up and nailed shut the rear door of the Property.  (Strathy Dep. Tr. (Dkt. No. 71) 39:15-40:2; 48:2-9)  Date stamped photographs from March 11, 2011, show several empty rooms as well as before and after images of the house's front door and newly installed electronic lock.  (Market Decl. (Dkt. No. 55), Ex. N: Cash For Keys Fulfillment Form and attached photographs; see also Strathy Dep. Tr. (Dkt. No. 71) 43-45, 48-49)  The first floor windows were also protected by bars.  (Def. R. 56.1 Stmt. (Dkt. No. 52) ¶ 8; Pltf. R. 56.1 Resp. (Dkt. No. 69) ¶ 8; see also Sept. 12, 2012 Jacob Philip Deposition Transcript ("Pltf. Dep. Tr.") (Dkt. No. 72) 77:4-6)[5]

---

Declaration, and those portions of Defendant's Rule 56.1 statements that rely on these materials, are overruled.  Accordingly, in addition to the paragraphs of Defendant's Rule 56.1 Statement to which no objections have been raised – 1, 7, 9, 10, 11, 13, 15, 17, and 21 – paragraphs 3-6 of Defendant's Local Rule 56.1 Statement are deemed admitted.

[5] Plaintiff objects to Defendant's statement of fact on this point, claiming that Defendant has mischaracterized Plaintiff's deposition testimony.  (Pltf. R. 56.1 Resp. (Dkt. No. 69) ¶ 8)  At his deposition, Plaintiff testified as follows:

Q.    There were bars on the first floor windows, correct?
A.    Yes, and the tree, yes.

(Pltf. Dep. Tr. (Dkt. No. 72) 77:4-6)  The Court finds no mischaracterization in Defendant's use of Plaintiff's deposition testimony on this point.

## II.   **PLAINTIFF'S ENTRY ON THE PROPERTY**

Two weeks later – on March 25, 2011 – Plaintiff was brought to the Property

between 8:30 p.m. and 9:00 p.m. by a man named Bipu Mohammed.  (Pltf. R. 56.1 Resp. (Dkt.

No. 69) ¶ 7)  Mohammed used a key to gain entry to the premises.  (Id.; Pltf. Aff. (Dkt. No. 66) ¶

10)  According to Plaintiff, he had spoken with Mohammed earlier that week – on March 22,

2011 – about renting a room at the Property.  (Pltf. Dep. Tr. (Dkt. No. 72) 69:8-13)

While it is undisputed that Defendant was the owner of the Property on March 25,

2011, Plaintiff states that he believed at the time that another man named Mohammed – not Bipu

Mohammed – owned the Property.  (Pltf. R. 56.1 Resp. (Dkt. No. 69) ¶ 14)[6]  It is undisputed,

however, that no one named Bipu Mohammed or Mohammed was employed or was otherwise

engaged by or on behalf of Defendant or its agents in relation to the Property.  (Def. R. 56.1

Stmt. (Dkt. No. 52) ¶ 22 (citing Dougherty Decl. (Dkt. No. 54) ¶ 8))[7]  Furthermore, a private

---

[6]  Plaintiff objects to this statement of fact on the ground that it mischaracterizes his deposition
testimony.  See Pltf. R. 56.1 Resp. (Dkt. No. 69) ¶ 14.  However, at his deposition, Plaintiff
testified that he believed the Property was owned by someone named Mohammed:

| | |
|---|---|
| Q. | Did he [i.e., Bipu Mohammed] tell you who owned the [Property]? |
| A. | A Pakistani guy. |
| Q. | You said a Pakistani guy owned the house? |
| A. | His friend. |
| Q. | Can you describe everything you said and he said during that conversation on or about March 22nd[?] |
| A. | March 22nd, he said he had a house, a room for rent in a house, it is owned by his friend, a Pakistani guy – |
| Q. | Did he mention his name? |
| A. | He mentioned, he is also Mohammed something, I don't recall the full name. |

(Pltf. Dep. Tr. (Dkt. No. 72) 69:23-70:14)  Accordingly, Plaintiff's objection is overruled.

[7]  Plaintiff does not respond to Paragraph 22 of Defendant's 56.1 Statement.  (Pltf. R. 56.1 Resp.
(Dkt. No. 69) ¶ 22)  Plaintiff's failure to dispute Defendant's statement of fact constitutes an
admission.  See Giannullo, 322 F.3d at 140 (once a moving party submits a statement of fact
supported by admissible evidence, "[i]f the opposing party . . . fails to controvert a fact so set

investigator's background check on Bipu Mohammed on October 25, 2012, yielded no address information for such a person. (Markert Decl. (Dkt. No. 55), Ex. C: Investigative Report) Investigators also interviewed residents on the block containing the Property, but none reported knowing anyone named Bipu Mohammed. (Id. at 2-3)

Plaintiff concedes that he did not enter into a written lease agreement for the Property (Pltf. R. 56.1 Resp. (Dkt. No. 69) ¶ 13), nor did he pay any money, rent or other valuable consideration to stay at the Property. (Def. R. 56.1 Stmt. (Dkt. No. 52) ¶ 12; Pltf. R. 56.1 Resp. (Dkt. No. 69) ¶ 12)[8]

At the time Plaintiff entered the premises, the first floor windows of the Property had bars on them. (Pltf. R. 56.1 Resp. (Dkt. No. 69) ¶ 8) The Property had working electricity, lights, and hot water. (Id. ¶¶ 9-10) Plaintiff testified that the heat was turned off, however, due to construction at the Property. (Id. ¶ 11) Plaintiff testified that Bipu Mohammed said that it would be turned on the following day.[9] (Id.; see also Pltf. Dep. Tr. (Dkt. No. 72) 90:21-91:6)

---

forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted") (citations omitted).

[8] Plaintiff disputes this assertion, but cites no relevant evidence in support of his objection. See Pltf. R. 56.1 Resp. (Dkt. No. 69) ¶ 12. Plaintiff directs the Court to paragraph 18 of his Affidavit in Opposition (Dkt. No. 66), in which he states: "I purchased toiletries and brought them with me when I arrived at 'the [P]roperty'. It was my intention to stay and sleep there, if I decided to rent the room. I had arrived by taxi and did not want to incur the expense of another taxi." (Pltf. Aff. (Dkt. No. 66) at ¶ 18) This statement does not demonstrate that Plaintiff paid rent, money, or other consideration to stay at the Property, and thus does not put into dispute Defendant's statement of material fact. Accordingly, Plaintiff's objection is overruled.

[9] Plaintiff also notes that on March 26, 2011, there were no smoke detectors installed at the Property. (Pltf. R. 56.1 Resp. (Dkt. No. 69) ¶ 23) While there is no dispute as to this fact (Def. R. 56.1 Resp. (Dkt. No. 63) ¶ 23), it is not relevant to the grounds on which this Court resolves Defendant's summary judgment motion.

Plaintiff further testified that another man – whose name he does not recall but whom Plaintiff believes is Bangladeshi – was living at the Property when he arrived.[10] (Pltf. Dep. Tr. (Dkt. No. 72) 65:20-66:20)  Plaintiff and the man said "hello" but did not engage in any further conversation. (Id.)

Plaintiff did not bring any furniture, clothing, or appliances to the Property, although he had a "toothbrush, shaving stuff, [a] razor . . . [and] a towel" which he had purchased from the "subway store." (Id. at 91:16-92:13; 92:23-93:15)  Plaintiff maintains that he intended to move his belongings into the Property the following day "if [he] decided to rent the room." (Pltf. Aff. (Dkt. No. 66) ¶ 15)

Although Plaintiff had brought no clothing or furniture with him, he decided to sleep at the Property that night – March 25, 2011. (Pltf. Dep. Tr. (Dkt. No. 72) 91:16-24; see Pltf. R. 56.1 Resp. (Dkt. No. 69) ¶ 17)  Plaintiff slept on a bare floor. (Pltf. Dep. Tr. (Dkt. No. 72) 97:5-14)

## III.   THE FIRE

That evening – during the early morning hours of March 26, 2011 – a fire started at the Property. (Pltf. R. 56.1 Resp. (Dkt. No. 69) ¶ 15)  The outside temperature at the time of the fire was approximately thirty degrees Fahrenheit. (Markert Decl. (Dkt. No. 55), Ex. E: Report of Plaintiff's Fire Expert William Kregler at 2)  The cause of the fire was a hot plate that was being used as a heating device. (Pltf. R. 56.1 Resp. (Dkt. No. 69) ¶¶ 16, 31)

---

[10]  In his affidavit in opposition to Defendant's motion, Plaintiff identifies the other person living at the Property as "Ash Miah." (Pltf. Aff. (Dkt. No. 66) ¶ 11)  Having testified at his deposition (see Pltf. Dep. Tr. (Dkt. No. 72) 65:20-66:20; see also id. at 112:13-18) that he could not recall the name of the other occupant, however, Plaintiff cannot contradict that testimony by asserting that he knows the other occupant's name to be "Ash Miah." See Hayes v. New York City Dept. of Correction, 84 F.3d 614 (2d Cir. 1996) ("[A] party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony.") (citation omitted).

Plaintiff awoke when he smelled smoke. (Id. ¶ 17) Plaintiff determined that the fire was coming from the Bangladeshi man's room. (Pltf. Dep. Tr. (Dkt. No. 72) 122:7-13, 124:12-21) Plaintiff entered the room where the other man was sleeping to warn him about the fire. (Id. at 122:14-16, 124:7-21)

Plaintiff then attempted to extinguish the fire, making 10 to 20 trips to the bathroom to fill a bucket with water so he could pour it on the fire. (Id. at 122:19-123:1, 124:23-24, 132:1-19; Pltf. R. 56.1 Resp. (Dkt. No. 69) ¶ 19)[11] While Plaintiff was going back and forth between the bathroom and the fire, Plaintiff lost consciousness due to smoke inhalation. (Pltf. Aff. (Dkt. No. 66) ¶ 26; see Pltf. Dep. Tr. (Dkt. No. 72) 124:22-125:2) As a consequence, Plaintiff suffered severe burns. (Markert Decl. (Dkt. No. 55), Ex. G (Simpson Medical Report))

On May 18, 2011, Defendant sold the Property to Range Development, Inc. (Markert Decl. (Dkt. No. 55), Ex. K:  Property Deed) During the time that Defendant owned the Property, there were no reported incidents of trespass. (Def. R. 56.1 Stmt. (Dkt. No. 52) ¶ 20; Pltf. R. 56.1 Resp. (Dkt. No. 69) ¶ 20)[12]

---

[11]  Plaintiff objects to Defendant's statement of fact on this point, arguing that it mischaracterizes Plaintiff's testimony. (Pltf. R. 56.1 Resp. (Dkt. No. 69) ¶ 19) This Court understands Plaintiff's objection to be based on Defendant's assertion that Plaintiff chose to remain inside the Property to extinguish the fire rather than leaving the premises. See Def. R. 56.1 Stmt. (Dkt. No. 52) ¶ 19. Because the issue of whether Plaintiff unreasonably remained within the Property during the fire is not material to the outcome of Defendant's summary judgment motion, the Court need not resolve whether Plaintiff's decision to remain inside the Property has any bearing on the cause of his injuries.  To the extent that Defendant's Rule 56.1 Statement describes Plaintiff's efforts to extinguish the fire, that description is consistent with Plaintiff's deposition testimony.

[12]  Plaintiff objects to Defendant's statement of fact on this point, directing the Court to Paragraph 22 of Plaintiff's Affidavit. (Pltf. R. 56.1 Resp. (Dkt. No. 69) ¶ 20; see Pltf. Aff. (Dkt. No. 66) ¶ 22) Nothing in that paragraph raises a factual dispute as to prior incidents of reported trespass, however.

Plaintiff also argues that the records of the New York City Department of Buildings, Environmental Control Board ("ECB") indicates an open violation concerning the Property. See Declaration of Edwin T. Mulhern in Opposition to Defendant's Motion for Summary Judgment ("Mulhern Decl.") (Dkt. No. 67), Ex. C:  ECB Violation Report; see also Pltf. R. 56.1 Resp.

## IV.    PROCEDURAL HISTORY

Plaintiff filed this action on September 22, 2011, in Supreme Court of the State of New York, New York County.  (Notice of Removal (Dkt. No. 1), Ex. A:  Cmplt.)  On December 7, 2011, Defendant removed this action to federal court on the basis of diversity of citizenship.  (Id. ¶¶ 8-10; see 28 U.S.C. § 1441(a) and (b))  Plaintiff moved to remand this action to state court (Dkt. No. 7), but Plaintiff's remand motion was denied on June 19, 2012.  (Dkt. No. 13)  Defendant now moves for summary judgment.  (Dkt. No. 50)

## DISCUSSION

## I.    LEGAL STANDARD

Summary judgment is warranted where the moving party shows that "there is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor."  Beyer v. Cnty. of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (citing Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007)).  "A fact is material for these purposes if it might affect the outcome of

---

(Dkt. No. 69) ¶¶ 25, 26.  That violation, however, relates to use of the cellar for occupancy, and is dated September 11, 2008, more than two years before the events at issue here.

Although not cited by Plaintiff, ECB records indicate that on January 6, 2009, ECB received a complaint that the Property was vacant, open, and unguarded:

> CALLER STATES THAT THERE IS AN ABANDONED BUILDING WITH NO DOORS AND NOW PEOPLE ARE ENTERING AS WELL.  SHE BELIEVES IT SHOULD BE BOARDED FOR SAFETY BACK OF BUILDING

(Markert Decl. (Dkt. No. 55) Ex. J:  ECB Violation History, at 16 of 19 (emphasis in original))  However, this complaint was received approximately twenty months before Defendant became titleholder of the Property.  Moreover, when the inspector visited the site on January 14, 2009, to investigate the complaint, the inspector found no violation.  See id. ("NO VIOLATION WARRANTED FOR COMPLAINT AT TIME OF INSPECTION . . . FRONT & REAR DOORS LOCKED – NOT OPEN TO UNAUTHORIZED ENTRY").

In sum, the ECB Violation History does not raise a triable issue of fact as to whether Defendant was on notice of a history of trespass at the Property.

the suit under the governing law." Overton v. New York State Div. of Military & Naval Affairs,

373 F.3d 83, 89 (2d Cir. 2004) (quotations omitted).  "In order to defeat defendant's motion for

summary judgment [in a negligence claim], plaintiff must raise a material issue of fact about

whether [defendant] was negligent as a matter of law." Rodriguez v. Modern Handling Equip. of

NJ, Inc., 604 F. Supp. 2d 612, 620-21 (S.D.N.Y. 2009).

In deciding a summary judgment motion, the Court "resolve[s] all ambiguities,

and credit[s] all factual inferences that could rationally be drawn, in favor of the party opposing

summary judgment." Cifra, 252 F.3d at 216.  However, a "'party may not rely on mere

speculation or conjecture as to the true nature of the facts to overcome a motion for summary

judgment. . . . [M]ere conclusory allegations or denials . . . cannot by themselves create a

genuine issue of material fact where none would otherwise exist.'" Hicks v. Baines, 593 F.3d

159, 166 (2d Cir. 2010) (alterations in original) (quoting Fletcher v. Atex, Inc., 68 F.3d 1451,

1456 (2d Cir. 1995)).

## III.    DEFENDANT IS ENTITLED TO SUMMARY
##         JUDGMENT ON PLAINTIFF'S NEGLIGENCE CLAIM

Because this Court's subject matter jurisdiction is predicated on diversity of

citizenship,[13] the Court will apply New York law.  See Erie R.R. Co. v. Tompkins, 304 U.S. 64

(1938).

Under New York law, "a plaintiff must establish three elements to prevail on a

negligence claim:  '(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of

this duty; and (3) injury to the plaintiff as a result thereof.'" Alfaro v. Wal-Mart Stores, Inc., 210

---

[13]  Plaintiff is a New York citizen, while Defendant's principal place of business is California.
(Notice of Removal (Dkt. No. 1) ¶¶ 9-10)  As noted in this Court's June 20, 2012 Order denying
Plaintiff's Motion to Remand, the amount in controversy is $100 million. Philip v. Deutsche
Bank Nat'l Trust Co., 11 CIV. 8960 PGG, 2012 WL 2354242, at *3 (S.D.N.Y. June 20, 2012).

F.3d 111, 114 (2d Cir. 2000) (quoting <u>Akins v. Glens Falls City Sch. Dist.</u>, 53 N.Y.2d 325, 333 (N.Y. 1981)).

"The existence of a duty is an essential element of a negligence claim because, '[i]n the absence of a duty, as a matter of law, no liability can ensue.'" <u>Farash v. Cont'l Airlines, Inc.</u>, 574 F. Supp. 2d 356, 367 (S.D.N.Y. 2008) (alteration in original) (quoting <u>McCarthy v. Olin Corp.</u>, 119 F.3d 148, 156 (2d Cir. 1997)), <u>aff'd</u>, 337 F. App'x 7 (2d Cir. 2009). "'Although juries determine whether and to what extent a particular duty was breached, it is for the courts first to determine whether any duty exists.'" <u>Drake v. Lab. Corp. of Am. Holdings</u>, 02CV1924 (FB)(RML), 2007 WL 776818, at *2 (E.D.N.Y. Mar. 13, 2007) (quoting <u>Darby v. Compagnie Nat'l Air France</u>, 96 N.Y.2d 343, 347 (N.Y. 2001)) (citations omitted), <u>aff'd</u>, 417 F. App'x 84 (2d Cir. 2011); <u>see also</u> <u>Palka v. Servicemaster Mgmt. Servs. Corp.</u>, 83 N.Y.2d 579, 585 (N.Y. 1994) ("[T]he definition of the existence and scope of an alleged tortfeasor's duty is usually a legal, policy-laden declaration reserved for judges to make prior to submitting anything to fact-finding or jury consideration.") (citations omitted).  Accordingly, the determination of whether the alleged tortfeasor owes a duty of care towards a plaintiff is a threshold matter for the court. <u>Rodriguez</u>, 604 F. Supp. 2d at 621 (citing <u>Palka</u>, 83 N.Y.2d at 585); <u>see also</u> <u>Basso v. Miller</u>, 40 N.Y.2d 233, 242 (N.Y. 1976) ("[B]efore it becomes appropriate for the jury to consider all such questions, the court . . . must make the threshold determination as to whether the plaintiff, by introducing adequate evidence on each element, has made a case sufficient in law to support a favorable jury verdict.  Only in those cases where there arises a real question as to the landowner's negligence should the jury be permitted to proceed.").

"A plaintiff must show more than a duty owed to a potentially limitless class of people, but rather a specific duty owed to the plaintiff." <u>Gen. Star Indem. Co. v. Platinum</u>

Indem. Ltd., 00 CIV.4960 LMM GWG, 2002 WL 31159106, at *3 (S.D.N.Y. Sept. 27, 2002)

(citing and quoting Hamilton v. Beretta U.S.A. Corp., 96 N.Y.2d 222, 232 (N.Y. 2001) ("injured

party must show that a defendant owed not merely a general duty to society but a specific duty to

him or her"); Lauer v. City of New York, 95 N.Y.2d 95, 100 (N.Y. 2000) ("Without a duty

running directly to the injured person there can be no liability in damages, however careless or

foreseeable the harm.") (citations omitted)).  The Second Circuit has cautioned that where "the

applicable duty relationship is well established[,] . . . the judicial power to modify the general

rule of ordinary care is reserved for very limited situations and is not to be exercised . . . on an ad

hoc basis." Alfaro, 210 F.3d at 115 (citations and internal quotation marks omitted); see also

Darby, 96 N.Y.2d at 347 (a finding of negligence "may be based only upon the breach of a duty.

If . . . the defendant owes no duty to the plaintiff, the action must fail.  Although juries determine

whether and to what extent a particular duty was breached, it is for the courts first to determine

whether any duty exists") (citations omitted).

       The determination of whether a party breached a duty of care may, under

appropriate circumstances, be resolved as a matter of law.  See Alfaro, 210 F.3d at 116 ("[W]e

hold that Wal-Mart's alleged breach – failing to assist Alfaro in a timely manner – was outside

the scope of its duty to Alfaro.") (internal citation and quotation marks omitted); Blye v.

Manhattan & Bronx Surface Transit Operating Auth., 124 A.D.2d 106, 109 (1st Dep't 1987)

("The facts at bar, which are not susceptible to varying interpretations, enable us to determine, as

a matter of law, whether a breach of duty of care has occurred." (citing Sheehan v. City of New

York, 40 N.Y.2d 496, 502 (N.Y. 1976); Palsgraf v. Long Island Railroad Company, 248 N.Y.

339, 345 (N.Y. 1928); Amoruso v. New York City Transit Auth., 12 A.D.2d 11, 12 (1st Dep't

1960))).

A.    **Landowner's Duty of Care**

Under New York law, "the liability of a landowner to one injured upon his property [is] governed, not by the ancient and antiquated distinctions between trespassers, licensees, and invitees decisive under common law, but rather by the standard applicable to negligence cases generally, i.e., the '[single] standard of reasonable care under the circumstances whereby foreseeability shall be a measure of liability.'" Scurti v. City of New York, 40 N.Y.2d 433, 437 (N.Y. 1976) (quoting Basso, 40 N.Y.2d at 241); see also Rivera v. Nelson Realty, LLC, 7 N.Y.3d 530, 533 (N.Y. 2006) ("Finding these distinctions unduly complicated and difficult to apply, we discarded them in Basso in favor of what we called 'the simple rule of reasonable care under the circumstances.'" (quoting Basso, 40 N.Y.2d at 240-41)). Today, "[i]t is . . . firmly established that the manner in which a party comes upon property is no longer 'the conclusive determinant of a land occupier's duty . . . .'" Waters v. New York City Hous. Auth., 116 A.D.2d 384, 389 (2d Dep't 1986) (quoting Quinlan v. Cecchini, 41 N.Y.2d 686, 687 (N.Y. 1977)), aff'd, 69 N.Y.2d 356 (N.Y. 1987).

While status is no longer dispositive, the likelihood of plaintiff's presence on the property is "a primary independent factor in determining foreseeability[,] and the duty of the owner or occupier will vary with the likelihood of plaintiff's presence at the particular time and place of the injury." Basso, 40 N.Y.2d at 241. Accordingly, "considerations of who plaintiff is and what his purpose is upon the land are factors which, if known, may be included at arriving at what would be reasonable care under the circumstances." Id. In other words, although liability of a landowner is measured by a single standard, a party's status – trespasser, licensee, or invitee – is still relevant to the foreseeability analysis in determining whether the defendant upheld the reasonable standard of care. See Fagan v. Long Island Realty & Dev., Ltd., 17 Misc. 3d 1115(A)

(Sup. Ct. 2007) (citing and quoting Quinlan, 41 N.Y.2d at 689 ("[T]he factual props which formerly determined status are not irrelevant in the determination of foreseeability and the expectation of care.") (citations omitted)).  While foreseeability is ordinarily a jury question, "[i]n any negligence case the court must always determine as a threshold matter whether the facts will support an inference of negligence or lack of negligence." Scurti, 40 N.Y.2d at 442 (citing Basso, 40 N.Y.2d 433).

### 1.     The Undisputed Facts Demonstrate that Plaintiff Was a Trespasser

Defendant's principal assertion in its summary judgment motion is that Plaintiff was a trespasser whose presence on the Property was unforeseeable.  (Def. Br. (Dkt. No. 53) at 16)  Accordingly, Defendant argues that it cannot be liable because it owed no duty to Plaintiff, id. at 17 (citing Bracci v. Roberts, 217 A.D.2d 897, 897 (3d Dep't 1995) ("Because foreseeability is a critical element of the landowner's duty to maintain property in a reasonably safe condition, no liability arises where the injured party's presence on the property is not reasonably foreseeable.") (citations omitted)), or, alternatively, that it did not breach its duty to plaintiff because its actions were reasonable under the circumstances.  (Id. at 20-23)

Plaintiff disputes Defendant's assertion that he was a trespasser (Pltf. Br. (Dkt. No. 68) at 6), pointing to the following facts:  (1) he was given access and working keys to the Property; (2) a man named Bipu Mohammed, who Plaintiff believed worked for the owner of the Property, showed him the residence and allowed him to stay in the Property; (3) the electricity and hot water were functioning; (4) the Property had no "no trespassing" signage; (5) the Property did not have a functioning alarm system; (6) the windows were not boarded up; and (7) another individual was living at the Property.  (Id.)

None of these facts are relevant to the determination of whether Plaintiff was a trespasser, however.  Viewing the evidence in the light most favorable to Plaintiff, this Court credits Plaintiff's uncorroborated assertion that he was given both access and working keys to the Property, and that he honestly believed that Bipu Mohammed was an authorized employee or agent of the owner.  Notwithstanding these facts, given that it is undisputed that Bipu Mohammed is not – and has never been – an employee or agent of either Defendant or Altisource, he had no authority to grant Plaintiff permission to enter or stay on the Property.

"Trespass is an intentional entry onto the land of another without justification or permission." Woodhull v. Town of Riverhead, 46 A.D.3d 802, 804 (2d Dep't 2007) (citing Long Island Gynecological Servs. v. Murphy, 298 A.D.2d 504 (2d Dep't 2002); Golonka v. Plaza at Latham, 270 A.D.2d 667, 669 (3d Dep't 2000); Augeri v. Roman Catholic Diocese of Brooklyn, 225 A.D.2d 1105, 1106 (4th Dep't 1996)).  A trespasser "need not intend or expect the damaging consequence of his intrusion," but merely "intend the act which amounts to or produces the unlawful invasion." In re Methyl Tertiary Butyl Ether (MTBE) Products Liab. Litig., 725 F.3d 65, 119 (2d Cir. 2013) (quoting Phillips v. Sun Oil Co., 307 N.Y. 328, 331 (N.Y. 1954)).  A trespasser's subjective belief as to his status is therefore irrelevant in determining his legal status as a trespasser.  "A person who enters upon the land of another, without the owner's permission, 'whether innocently or by mistake, is a trespasser.'" Burger v. Singh, 28 A.D.3d 695, 698 (2d Dep't 2006) (quoting Golonka, 270 A.D.2d at 669).  Accordingly, Plaintiff's sincere belief that he had the right to enter the Property has no bearing on whether he was authorized to enter or remain on the Property.

Furthermore, the undisputed facts confirm that Plaintiff was not a tenant.  He neither paid any consideration to rent the Property nor executed a written lease.  (Def. R. 56.1

16

Stmt. (Dkt. No. 52) ¶¶ 12-13; Pltf. R. 56.1 Resp. (Dkt. No. 69) ¶¶ 12-13)  A tenant is "[o]ne who

holds land by any kind of title, whether for years, for life, or in fee . . . and he of whom land is

held subject to the rendering payment of rent or service is landlord." Hosford v. Ballard, 39 N.Y.

147, 151 (N.Y. 1868); see also Schwarzschild v. Chotovitz, 62 N.Y.S.2d 233 (1st Dep't 1946)

(same); N.Y. Real Prop. Tax Law § 499-a (McKinney 2014) (A tenant is "[a] person (including

any successors in interest) who executes a lease with the landlord for the right to occupy or use

the eligible premises and who occupies or uses the eligible premises pursuant to such lease").

Since Plaintiff was not a tenant and had no other lawful reason for being on the

Property at the time of the fire, this Court concludes as a matter of law that he was a trespasser.

Accordingly, the duty that Defendant owed Plaintiff was one of "reasonable care under the

circumstances." Scurti, 40 N.Y.2d at 437; see also Basso, 40 N.Y.2d at 241 (regardless of an

entrant's status "[a] landowner must act as a reasonable man in maintaining his property in a

reasonably safe condition in view of all the circumstances, including the likelihood of injury to

others, the seriousness of the injury, and the burden of avoiding the risk") (quoting Smith v.

Arbaugh's Rest., 469 F.2d 97, 100 (D.C. Cir. 1972)).

### 2.    The Undisputed Facts Demonstrate that Defendant Did Not Breach Any Duty to Plaintiff

"'The duty of a landowner to maintain its property in a safe condition extends to

persons whose presence is reasonably foreseeable by the landowner.'" Salim v. W. Reg'l Off-

Track Betting Corp., 100 A.D.3d 1370, 1371 (4th Dep't 2012) (quoting Brown v. Rome Up &

Running, Inc., 68 A.D. 1708, 1708 (4th Dep't 2009)).  "Questions concerning foreseeability . . .

are generally questions for the jury." Paul v. Cooper, 45 A.D.3d 1485, 1487 (4th Dep't 2007).

However, a court may decide the issue of foreseeability "when but a single inference can be

drawn from the undisputed facts." Hessner v. Laporte, 171 A.D.2d 999, 999-1000 (3d Dep't

1991) (granting summary judgment where "the undisputed facts present[ed] no evidence that defendants maintained their property in such a way as to constitute a hazardous condition presenting a foreseeable danger").  To uphold its duty of care, a landowner "must take reasonable measures to prevent injury to those whose presence on the property can reasonably be foreseen." Scurti, 40 N.Y.2d at 441-42; see also Hessner, 171 A.D.2d at 1000 (affirming summary judgment; "given the reasonable measures undertaken by defendants in maintaining their property, we find that such unfortunate events causing [plaintiff's] injuries were insufficiently foreseeable to establish any breach by defendants").

### i.      **Plaintiff's Trespass Was Not Foreseeable**

Defendant argues that Plaintiff's presence on the Property on the night of the fire was unforeseeable, "because the Property had been secured and made inaccessible by Defendant." (Def. Br. (Dkt. No. 53) at 17)  Defendant notes that its agent (1) paid the only tenant, Calmer Clarke, to vacate and surrender the Property on March 11, 2011; (2) changed the locks and installed a digital lock box on the Property's front door two weeks prior to the fire; and (3) nailed shut the Property's back door.  (Id.)  Defendant further notes that the Property's first floor windows were barred.  (Id. at 18)

As a preliminary matter, the mere fact that Plaintiff was a trespasser in a vacant building does not, of course, serve to absolve Defendant from liability.  See Fagan, 17 Misc. 3d 1115(A) ("[P]laintiff's status as a trespasser does not absolve the landowner of its duty to exercise reasonable care under the circumstances." (citing Soich v. Farone, 307 A.D.2d 658 (3d Dep't 2003) ("It is well settled that a plaintiff's status as [a] trespasser does not absolve the landowner of its duty to exercise reasonable care under all the circumstances."))); Costanza v. State, 151 Misc. 2d 703, 706 (N.Y. Ct. Cl. 1991) ("The duty of care is not abrogated because the

property was vacant . . . ." (citing <u>Benjamin v. City of New York</u>, 99 A.D.2d 995, 996 (1st Dep't 1984) (finding "the city was required to act as a reasonable person in maintaining [a vacant, unimproved] lot in a reasonably safe condition") (citation and internal quotation marks omitted))).

However, "[t]he fact that the plaintiff entered without [the owner's] permission is . . . a relevant circumstance. . . . [that] may well demonstrate that the plaintiff's presence was not foreseeable at the time and place of the injury." <u>Scurti</u>, 40 N.Y.2d at 442 (citing <u>Basso</u>, 40 N.Y.2d at 241).   In other words, Plaintiff's status as a trespasser is significant in determining whether the precautions Defendant took were reasonable, and whether the Defendant breached any duty of care that it owed Plaintiff. <u>Basso</u>, 40 N.Y. 2d at 241 ("While status is no longer determinative, considerations of who plaintiff is and what his purpose is upon the land are factors which, if known, may be included in arriving at what would be reasonable care under the circumstances"); <u>see also Soich</u>, 307 A.D.2d at 660 ("Plaintiff's status as a trespasser must be considered in determining whether it would be reasonable to require defendants to take steps to remedy the defect and may ultimately result in a finding that defendants did not breach their duty of reasonable care under the circumstances.").

The foreseeability of a trespasser depends upon "the facts of the case including the location of the property in relation to populated areas, its accessibility and whether there have been any prior incidents of trespassing in the area where the injury occurred." <u>Scurti</u>, 40 N.Y. 2d at 442.  Defendants do not dispute that the property was located in a highly populated residential area of Queens.  Defendants contend that they are entitled to summary judgment because (1) "the [P]roperty had been secured and made inaccessible by Defendant"; and (2) "Defendant had no knowledge of any prior incidents of trespass."  (Def. Br. (Dkt. No. 53) at 17-18)

Plaintiff has not disputed with admissible evidence that on March 11, 2011, following the "cash-for-keys" exchange between the Defendant and Calmer Clarke -- the only tenant then living in the Property -- the Defendant changed the lock on the front door and installed a digital lock box.  (Def. R. 56.1 Stmt. (Dkt. No. 52) ¶ 5; Pltf. R. 56.1 Resp. (Dkt. No. 69) ¶ 5)  Plaintiff has also not disputed with credible evidence that (1) Defendant boarded and nailed shut the rear door of the Property on March 11, 2011, (2) the Property was in "broom clean" condition as of that same day, and (3) the Property's first floor windows were barred. (Def. R. 56.1 Stmt. (Dkt. No. 52) ¶¶ 6, 8; Pltf. R. 56.1 Resp. (Dkt. No. 69) ¶¶ 6, 8)  It is also undisputed that the only report of trespassing occurred twenty months before Defendant took title to the Property, and that when the report of trespassing was investigated, it was found to be unsubstantiated.  (Markert Decl. (Dkt. No. 55), Ex. J at 16 of 19)

Based on these undisputed facts, this Court finds as a matter of law that neither Plaintiff's presence on the Property, nor the fire caused by a hot plate used as a heating device, were foreseeable to Defendant.

The Third Department's reasoning in <u>Elwood v. Alpha Sigma Phi, Iota Ch. Of Alpha Sigma Phi Fraternity, Inc.</u>, 62 A.D.3d 1074 (3d Dep't 2009) is instructive here.  In that case, the decedent plaintiff trespassed onto defendant's private property and subsequently fell into an 80-foot gorge that was cordoned off from the pathway by a five-foot high fence.  The Third Department found plaintiff's trespass – and subsequent death – unforeseeable as a matter of law, because "there [was] no evidence that anyone had ever trespassed on these areas prior to decedent's accident, that there were any prior accidents caused by the proximity of these areas to the gorge or that defendant's fence had ever failed to prevent anyone from inadvertently reaching the edge of the gorge."  <u>Id.</u> at 1076-77.  The court further found that the decedent's presence had

been a "singular, unexpected and unusual event." Id. at 1077 (citing Barry v. Gorecki, 38
A.D.3d 1213, 1215 (4th Dep't 2007) (affirming summary judgment; plaintiff's presence was
unforeseeable where plaintiff attended a party – hosted by defendant's son – at defendant's
house, and fell from a cliff located at the edge of the property; "The [parent-defendants] were not
present at the party, nor did they give their consent for it.  Indeed, the record establishes that the
[parent-defendants] had expressly forbidden [their son] from having people in the house while
they were away and that they did not allow him to drink or serve alcohol in their home")
(internal citations omitted); Hendricks v. Lee's Family, 301 A.D.2d 1013, 1013 (3d Dep't 2003)
(affirming summary judgment, and finding it unforeseeable that intoxicated plaintiff would
wander behind bushes on defendant's property to urinate and subsequently fall off a retaining
wall); McIntyre v. Beaver Dam Winter Sports Club, 163 A.D.2d 277, 279 (2d Dep't 1990)
(despite evidence that plaintiff "had used [defendants' property] for sledding on three or four
occasions," the court found plaintiff's presence unforeseeable as a matter of law because "prior
incidents of sledding were not so prevalent as to put defendants on notice of a dangerous
situation"); Pizzola v. State of New York, 130 A.D.2d 796, 797 (3d Dep't 1987) (affirming
dismissal where court found plaintiff's injuries, which resulted from a sledding accident after
plaintiff obtained cafeteria trays without permission, were unforeseeable because prior incidents
of sledding or "traying" were not so prevalent as to put state on notice of dangerous condition)).
Here, neither Defendant nor any of its agents had knowledge of prior trespassing.  Indeed, the
only reported incident of trespassing occurred twenty months earlier, and when investigated had
proven to be unsubstantiated.

     Moreover, Plaintiff's presence in the Property represents a "singular, unexpected
and unusual event." Elwood, 62 A.D.3d at 1077.  Plaintiff was brought to the Property late at

night and was given entry by someone who had no relationship with either Defendant or

Defendant's agent.  Plaintiff has offered no evidence suggesting that Defendant should have

foreseen that Bipu Mohammed would – two weeks after the Property was made secure – begin

marketing the Property as a rental.  See Rubsam v. Alexander, 177 A.D.2d 484 (2d Dep't 1991)

(defendant held not liable to plaintiff – a police officer – because it was not foreseeable that the

plaintiff would scale defendant's five-foot high wall during an investigation and subsequently

injure himself on a pile of concrete at the base of the other side (citing Guida v. 154 W. 14th St.

Co., 13 A.D.2d 695 (2d Dep't 1961) (court found defendants could not reasonably foresee that

plaintiff, who was locked outside defendant's building in an alleyway which was blocked off by

a high metal fence, would attempt to climb the fence and injure himself))).

   This action is distinguishable from cases in which a plaintiff-trespasser's presence

on a property was deemed foreseeable.  In Costanza v. State, for example, the claimant was

injured when he fell down an elevator shaft while trespassing in an abandoned state-owned

hospital.  151 Misc.2d 703.  The Court of Claims deemed the presence of the claimant-trespasser

sufficiently foreseeable because defendant had "received complaints from the community and

was aware of . . . ongoing vandalism. . . . The [defendant] should have realized that nighttime

was when [c]laimant and others would utilize this unsecured, abandoned building, situated in

close proximity to residential areas, to engage in various illicit activities common to that age

group."  Id. at 708.  Unlike the facts of Costanza, Plaintiff has pointed to no evidence in the

record of broken windows, missing doors or roofs, or past instances of trespass.

   In arguing that Plaintiff's presence was foreseeable, Plaintiff focuses on his

subjective reaction to his interactions with Bipu Mohammed and impressions of the interior of

the Property.  For example, Plaintiff argues that Mohammed told him that he was "working for

22

the owner of the property," that Mohammed had keys to the Property, that another individual

was living at the Property, and that the electricity and hot water were functioning.  (Pltf. Br.

(Dkt. No. 68) at 11)  As noted above, however, the issue here is not whether it was reasonable

for Plaintiff to believe that Bipu Mohammed was authorized to lease him space in the Property.

Instead, the critical issue is whether it was foreseeable to <u>Defendant</u> that Bipu Mohammed would

unlawfully break into the building, change the locks, and attempt to lease out the Property

scarcely two weeks after Defendant's agent had changed the locks, boarded up and nailed shut

the back door, confirmed that the last known tenant had vacated the premises, and put the

Property into a "broom clean" condition.  As explained above, Plaintiff's subjective belief as to

whether he was a lawful entrant on the Property has no bearing on whether Defendant had reason

to know of, or should have foreseen, Plaintiff's presence.

ii.      **Defendant Took Reasonable Steps to Exclude
<u>Trespassers and Secure the Property</u>**

Even assuming <u>arguendo</u> that knowledge of a potential for trespassing could be

imputed to Defendant solely by virtue of the fact that it owned a residential property in a densely

populated area, this Court finds that the undisputed evidence establishes – as a matter of law –

that Defendant took reasonable steps to secure the Property.  Defendant changed the locks,

boarded up and nailed shut the rear door, and had bars on the first floor windows.  Moreover, the

Property was inspected by Defendant's agent on March 11, 2011 – two weeks before the fire in

which Plaintiff was injured.  <u>See</u> Strathy Dep. Tr. (Dkt. No. 71) 8:16-25, 24:6-12.  "'In the

striving after safety, [an] owner . . . is not required to go beyond the bounds of what is

practicable and reasonable.'"  <u>Beauchamp v. New York City Hous. Auth.</u>, 12 N.Y.2d 400, 407

(N.Y. 1963) (alteration in original) (quoting <u>Caspersen v. La Sala Bros.</u>, 253 N.Y. 491, 495

(N.Y. 1930); citing <u>Timlin v. Standard Oil Co.</u>, 126 N.Y. 514, 523-24 (N.Y. 1891); <u>Odell v.</u>

23

Solomon, 99 N.Y. 635 (N.Y. 1885)); see also Peralta v. Henriquez, 100 N.Y.2d 139, 145 (N.Y. 2003) ("Judicial recognition of a duty of care must be based upon an assessment of its efficacy in promoting a social benefit as against its costs and burdens.") (citing Waters, 116 A.D.2d 384)). Requiring landowners like Defendant to do more would "produce an indeterminate class of plaintiffs without any reasonable limitations on liability." Peralta, 100 N.Y.2d at 145; see also Soich, 307 A.D.2d at 660 (citing Palmer v. Prescott, 208 A.D.2d 1065, 1067 (3d Dep't 1994) (finding – as a matter of law – that the obligation to remove snow and ice from vacant land "would cast a wholly unreasonable burden on the owners of vacant land")).

There is no evidence here that an injury of the sort suffered by Plaintiff "was only a matter of time." See Waters, 116 A.D.2d at 392 (Eiber, J., dissenting). No prior incidents of trespass had occurred and it is undisputed that the doors on the Property were locked, the first floor windows barred, and Defendant – through its agents – had inspected the Property only two weeks before Plaintiff's injury. To permit this case to proceed would expose all landowners whose property is temporarily vacant to suit by a trespasser, regardless of the reasonable measures taken to make the property secure. Because Plaintiff has not offered sufficient evidence to create a material issue of fact as to whether Defendant breached its duty of reasonable care to Plaintiff, Defendant is entitled to summary judgment.[14]

---

[14] Because this Court has determined as a matter of law that Defendant did not breach any duty owed to Plaintiff, it is unnecessary for this Court to address Defendant's argument that its actions did not cause Plaintiff's injuries.

## CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment is granted. The Clerk of the Court is directed to terminate the motion (Dkt. No. 50) and to close this case.

Dated: New York, New York
      September 30, 2014

SO ORDERED.

Paul G. Gardephe
United States District Judge